UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                Plaintiff,

  and,

MARIA CRUZ CONTRERAS and SOFIA
VERA RODRIGUEZ,

                Plaintiff-Intervenors,

     v.

GIPHX10 LLC, d/b/a HAWTHORN
SUITES BY WYNDHAM,

            Defendant.

CASE NO. 2:20-cv-01369-RAJ-BAT

**ORDER GRANTING
INTERVENOR-PLAINTIFF'S
MOTION FOR JOINDER**

       Plaintiff-Intervenors Maria Cruz Contreras and Sofia Vera Rodriguez move to join Jaffer,

Inc. ("Jaffer")[1] as a necessary party pursuant to Fed. R. Civ. P. 19(a)(1) or alternatively, as a

permissive party pursuant to Fed. R. Civ. P. 20(a)(2). Dkt. 19. Plaintiff Equal Employment

Opportunity Commission ("EEOC") is not opposed to the motion. Dkt. 24. Defendant GIPHX10

LLC, d/b/a Hawthorn Suites by Wyndham ("GIPHX10") opposes the motion. Dkt. 23.

---

[1] Plaintiff-Intervenors originally moved to join Jaffer Hospitality Group but indicate in their reply that the correct legal entity to join as a necessary party is Jaffer, Inc., a Canadian company based in Edmonton, Alberta. Dkt. 29, p. 2.

ORDER GRANTING INTERVENOR-
PLAINTIFF'S MOTION FOR JOINDER - 1

1    Having thoroughly considered the motion, opposition, and relevant record, the Court

2    **GRANTS** the motion to intervene pursuant to Fed. R. Civ. P. 19(a)(1).

3                                **BACKGROUND**

4           In December 2018, Plaintiff-Intervenors Contreras and Rodriguez filed discrimination

5    charges with the EEOC alleging they were sexually harassed while working at Hawthorn Suites,

6    a hotel owned by GIPHX10. Dkt. 27, Declaration of Sean M. Phelan ("Phelan Decl."), Ex. A at

7    GIPH 000119-122. Ms. Contreras also alleged that she suffered retaliation. *Id*. at GIPH 000119-

8    20. After an investigation, the EEOC issued reasonable cause determinations and invited

9    GIPHX10 to engage in conciliation. *Id*. at GIPH 000119-21. After attempts at conciliation

10   between the parties failed, the EEOC filed the initial complaint with this Court on September 17,

11   2020 against GIPHX10 alleging unlawful employment practices in violation of § 703(a) of Title

12   VII, 42 U.S.C. § 2000e. Dkt. 1.

13          On March 29, 2021, Ms. Contreras and Ms. Rodriguez were granted leave to intervene

14   (Dkt. 13) and they filed their Complaint in Intervention, which added claims for discrimination

15   under the Washington Law Against Discrimination (WLAD), RCW 46.90. Dkt. 14.

16                         **FACTS RELEVANT TO JOINDER**

17          In its initial disclosures, GIPHX10 identified Salima Mawani as the Vice President of

18   Operations for Jaffer, Inc., "a parent company of Defendant GIPHX10 LLC." Dkt. 30, Phelan

19   Dec., Ex. A at 4.[2] Jaffer Inc. is headquartered in Canada and is part of the Consulting Services

20   Industry division of the umbrella of companies referred to as "Jaffer Group" or "Jaffer

21

22

23
_____
[2] CM/ECF pagination is utilized.

ORDER GRANTING INTERVENOR-
PLAINTIFF'S MOTION FOR JOINDER - 2

Hospitality Group." Dkt. 30, Phelan Reply Decl. Ex. B.[3]

"Jaffer Group" describes itself on its website as "a conglomerate of entities in real estate development, construction, hospitality, property management, knowledge management and management consulting" that "operates internationally in the United States in Phoenix, Arizona and Seattle, Washington." Dkt. 30 Phelan Reply Decl. Ex. C (Jaffer Inc.'s webpage). The Jaffer Group website identifies two U.S.—based hotels in its portfolio: Hawthorn Suites in Kent and a Quality Inn in Phoenix. *Id.* Ex. D; Jaffer Group, Hospitality, https://www.jaffergroup.com/ hospitality (last visited June 1, 2021). The Jaffer Group website also lists VP of Operations, Salima Mawani, as a member of its leadership team. Dkt. 30, Phelan Reply Decl. Ex. E (Jaffer Group, About, https://www.jaffergroup.com/about (last visited June 1, 2021)).

According to Ms. Mawani, GIPHX10 is the employer of Plaintiff-Intervenors; a plaque in the building "broadcasts to employees that the hotel is owned and operated by GIPHX10"; Plaintiff-Intervenors and the alleged harasser are paid by GIPHX10; the general manager who took their complaint is employed by GIPHX10; and the EEOC sued only GIPHX10. Dkt. 23-1, Declaration of Salima Mawani. Ms. Mawani also states that GIPHX10 is owned exclusively by four holding companies (Jaffer Holdings Nevada Inc LLC, Imarae Nevada Corporation LLC, Jubliee Holdings USA Inc LLC, and Mawani Enterprises USA Inc LLC), which are fully owned by one of the four GIPX10's shareholders. Dkt. 23-1, Mawani Decl., ¶ 4. Because these shareholders work together, Ms. Mawani explains that they use "Jaffer" as a reference and refer to their U.S.-based hotels in Kent and Phoenix as the "Jaffer Hospitality Group," but insists that GIPHX10 "is solely responsible for all employment decisions of its employees." *Id.*, Mawani

---

[3] Dun & Bradstreet Business Directory, Jaffer Inc. Company Profile, https://www.dnb.com/ business-directory/ company-profiles.jaffer_inc.cc6eebb5757f390c3f19a5867d22c7a3.html (last visited June 1, 2021).

1 | Decl., ¶ 2.

2 | In its initial disclosures, GIPHX10 identified Ms. Mawani as a person who may have

3 | discoverable information about "the policies and procedures of GIPHX10 LLC as well as the

4 | employment conditions maintained by GIPHX10, LLC," and information "regarding GIPHX10

5 | LLC's handling of complaints brought by employees" and the company's "cooperation and

6 | communication with the EEOC." Dkt. 30, Phelan Reply Decl., Ex. A at 4. In discovery

7 | documents produced by GIPHX10, Ms. Mawani is identified as a direct supervisor of the

8 | GIPHX10 employees responsible for enforcing personnel policies at Hawthorn Suites. *Id*. Ex. H.

9 | GIPHX10 also identified Ms. Mawani as the supervisor to Hawthorn Suites General Managers,

10 | Mo Abou (later replaced by Cherelle Bryson). Dkt. 27 at 92. Ms. Mawani also responded to the

11 | EEOC charges on behalf of GIPHX10 and communicated with EEOC investigators regarding

12 | Plaintiff-Intervenors' claims. *Id.*, Ex. G at 94-97. Both Salima Mawani and Mo Abou use email

13 | addresses hosted by jafferinc.com in their communications with Plaintiff EEOC and Plaintiff-

14 | Intervenor Maria Contreras. *See*, *id*.

15 | In its response to EEOC charges for Ms. Rodriguez, counsel for GIPHX10 states

16 | "Hawthorn and Jaffer are also referred to herein as the 'employer.'" *Id.*, Ex. D (EEOC_

17 | 0001043); and "[f]or purposes of this Employer Statement, Hawthorn Suites and Jaffer will be

18 | referred to joint/collectively." *Id.*, Ex. E (EEOC_0001058). GIPHX10's responses on behalf of

19 | Plaintiff-Intervenors contained sections titled "Employment with Hawthorn Suites/Jaffer." *Id*.;

20 | Ex. D. (EEOC_00001043).

21 | GIPHX10 also attested in discovery that Ms. Mawani "recommended" terminating the

22 | employment of Mr. Abou in 2019. Dkt. 30, Phelan Reply Decl. Ex. G. In an April 9, 2019 email

23 | to EEOC investigator Gustavo Irizarry, Ms. Mawani referred to Ms. Bryson as "my current GM"

ORDER GRANTING INTERVENOR-
PLAINTIFF'S MOTION FOR JOINDER - 4

1    at Hawthorn Suites. *Id.*, Ex. I. GIPHX10 identified Ms. Bryson as "a managerial employee of

2    Defendant." *Id.,* Phelan Decl. Ex. A at 4. In a January 31, 2018 letter on "JAFFER" letterhead

3    addressed to "All Valued Staff" (signed by Plaintiff-Intervenor Maria Contreras), the "Jaffer

4    Team" advised that GIPHX10 had taken over ownership of Hawthorn Suites and described

5    GIPHX10 as "a hospitality company under the Jaffer umbrella, Jaffer Group of Companies

6    headquarters in Edmonton, Canada." Dkt. 27, Phelan Decl., Ex. B. In this same letter, the Jaffer

7    Team identified Ms. Mawani, alongside then-General Manager Mr. Abou, as someone

8    employees of Hawthorn Suites should "reach out to" with questions or concerns. *Id.* at 18.

9                                                **DISCUSSION**

10          Plaintiff-Intervenors respectfully move the Court to join Jaffer, Inc. as a necessary party

11   or in the alternative, as a permissive party, pursuant to Fed. R. Civ. P. 19 and 20.

12          Fed. R. Civ. P. 19(a)(1) provides in relevant part: "A person who is subject to service of

13   process and whose joinder will not deprive the court of subject matter jurisdiction must be joined

14   as a party if: in that person's absence, the court cannot accord complete relief among existing

15   parties." In applying Rule 19(a), the court must first determine whether the party is "necessary,"

16   and second, whether joining the party is feasible. *Wilbur v. Locke*, 423 F.3d 1101, 1111-12 (9th

17   Cir. 2005), *abrogated on other grounds*, *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010).

18          A party is necessary if "complete relief" cannot be accorded in the party's absence. Fed.

19   R. Civ. P. 19(a)(1)(A). Complete relief in this context is concerned with "consummate rather

20   than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on

21   the same cause of action." *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013). A party is

22   therefore necessary if its absence "would preclude the district court from fashioning meaningful

23   relief as between the parties." *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375

ORDER GRANTING INTERVENOR-
PLAINTIFF'S MOTION FOR JOINDER - 5

F.3d 861, 879 (9th Cir. 2004). Joinder is feasible if joining the party would not deprive the district court of subject matter jurisdiction. *See Yniques v. Cabral*, 985 F.32d 1031, 1034 (9th Cir. 1993).

Rule 20 governs permissive joinder. Rule 20(a)(2) provides, in relevant part, that a person may be joined as a defendant if a plaintiff can demonstrate: (1) that she has a right to relief based on the same series of transactions or occurrences as those at issue in the litigation, and (2) a common question of law or fact with respect to all parties. *Id*.; *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980). The decision regarding whether to join a permissive party is vested in the sound discretion of the district court, but "the rule regarding permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

The Court concludes that Jaffer, Inc. is a necessary party. The facts reflect that Jaffer, Inc. employed Plaintiff-Intervenors as their indirect employer and therefore, the Court cannot fashion complete relief with respect to Plaintiffs' claims without Jaffer's participation in the litigation.

      1.   <u>Title VII</u>

Jaffer may be held liable to Plaintiff-Intervenors for violations of their rights under Title VII as an indirect employer. *See*, *e.g.*, *Gomez v. Alexian Bros. Hosp.*, 698 F.2d 1019, 1021 (9th Cir. 1983) (determining that an entity that was not plaintiff's direct employer could be held liable under Title VII for discriminatory treatment of plaintiff); *Ass'n of Mexican-American Educators v. State of California*, 231 F.3d 572, 581 (9th Cir. 2000) (same).

1       An entity is an indirect employer for the purposes of Title VII liability if the entity

2   exercises some "peculiar degree of control" over the employee's relationship with the direct

3   employer and "interfere[s] with the employment decisions" of the direct employer. *Ass'n of*

4   *Mexican-American Educators*, 231 F.3d at 581-82. An indirect employer is liable under Title VII

5   if it participates in and influences the direct employer's employment policies, *id*. at 582, or

6   "fail[s] to take corrective measures" when discriminatory conduct occurs, *Anderson v. Pacific*

7   *Maritime Ass'n*, 336 F.3d 924, 932 (9th Cir. 2003).

8       The record reflects that Jaffer exerts "peculiar control" over the relationship between

9   Plaintiff-Intervenors and GIPHX10. At the time of the discrimination giving rise to this action,

10  Ms. Mawani, as VP of operations at Jaffer, was at the top of the chain of command over both

11  Plaintiff-Intervenors. Ms. Mawani had ultimate decision-making authority over the terms and

12  conditions of Plaintiff-Intervenors' employment at Hawthorn Suites, and she is a direct

13  supervisor of the GIPHX10 employees responsible for enforcing personnel policies at Hawthorn

14  Suites. *Id.*, Ex. F, G, and H. Ms. Mawani's peculiar control over GIPHX10 is also seen in her

15  responses to the EEOC charges on behalf of GIPHX10; her communications with EEOC

16  investigators regarding Plaintiff-Intervenors' claims (*id.*, Ex. G at 94-97); her emails sent on

17  behalf of GIPHX10 from a jafferinc.com email (*id.*); her recommendations regarding the

18  termination of GIPHX10's general manager (*id.*, Ex. G); and her references to "my current GM"

19  at Hawthorn Suites in her April 9, 2019 email to EEOC investigator Gustavo Irizarry (*id.*, Ex. I).

20  Ms. Mawani was also specifically identified as a person whom employees, including Plaintiff-

21  Intervenor Maria Contreras, should "reach out to" with questions or concerns. Dkt. 27, Phelan

22  Decl., Ex. B at 18.

23

ORDER GRANTING INTERVENOR-
PLAINTIFF'S MOTION FOR JOINDER - 7

1    The record also reflects that GIPHX10 employees must abide by the personnel policies of

2    Jaffer. Dkt. 27, Phelan Decl., Ex. C (Jaffer Hospitality Group Employee Handbook). The

3    handbook directs that complaints of "discriminatory practices shall be processed in accordance

4    with Jaffer Hospitality's [sic] Group's Harassment and Complaint Procedure Policy." *Id*. at

5    GIPH 000074-76. That procedure requires an employee to first raise concerns with her General

6    Manager, and if that report fails to correct the situation, the employee must escalate the matter to

7    the Regional Director. Jaffer's policy further provides: "After receiving a written grievance,

8    Jaffer Hospitality Group may hold a meeting" with relevant personnel. *Id*. at GIPH 000076.

9    Thus, Jaffer and its employees exert significant control over the creation and enforcement of

10   personnel policies related to equal employment opportunity at the hotel where both Plaintiff-

11   Intervenors worked. *See Ass'n of Mexican-American Educators*, 231 F.3d at 581-82.

12       Further, Jaffer declared its authority to hire and fire employees of GIPHX10 in the

13   Employee Handbook, for no reason at all pursuant to the at-will doctrine, or for violating

14   company policies, including the company's anti-retaliation policy. Dkt. 27, Phelan Decl., Ex. C

15   at GIPH 000072, GIPH 000076. The Handbook describes Jaffer's supervision and control over

16   conditions of employment at Hawthorn Suites, setting forth policies regarding meal and rest

17   breaks, uniforms, paid time off, attendance, pay methods, and telephone usage, among many

18   others. *See generally id*. Jaffer also requires that hotel employees alert Jaffer—not Hawthorn

19   Suites or GIPHX10—regarding changes to personal information such as legal name, mailing

20   address, and eligibility for tax exemptions, as set forth in the Handbook. *Id*. at GIPH 000081.

21       In addition, Jaffer responded to the EEOC charges in this action on behalf of GIPHX10,

22   LLC/ Hawthorn Suites, which was the sole party named in the charges. Dkt. 27, Phelan Decl.,

23   Ex. D; Ex. E; Ex. G. In its response to EEOC charges for Ms. Rodriguez, counsel for GIPHX10

ORDER GRANTING INTERVENOR-
PLAINTIFF'S MOTION FOR JOINDER - 8

states "Hawthorn and Jaffer are also referred to herein as the "employer." *Id.*, Ex. D

(EEOC_0001043); and "[f]or purposes of this Employer Statement, Hawthorn Suites and Jaffer

will be referred to joint/collectively." *Id.*, Ex. E (EEOC_0001058). Defendant's responses to

both charges on behalf of Plaintiff-Intervenors contained sections titled "Employment with

Hawthorn Suites/Jaffer." *Id.*; Ex. D. at EEOC_00001043).

By identifying itself repeatedly as Plaintiff-Intervenors' employer and taking full

responsibility for creating and implementing the personnel policies necessary to uphold

Hawthorn Suites' employees' rights to a workplace free from discrimination, Jaffer exerts "a

peculiar degree of control" over Plaintiff-Intervenors' relationship with GIPHX10/Hawthorn

Suites. *See Ass'n of Mexican-American Educators*, 231 F.3d at 581.

Additionally, even if considered an indirect employer, Jaffer may be held liable under

Title VII because the record reflects that it participates in and influences the direct employer's

employment policies, or "fail[s] to take corrective measures" when discriminatory conduct

occurs. Plaintiff-Intervenors allege that Jaffer "failed to take corrective measures" when it did

not stop the harassment against Plaintiff-Intervenors and failed to prevent retaliation against Ms.

Contreras after she reported the harassment to her immediate supervisor and then to the General

Manager, as Jaffer's Employee Handbook requires. Dkt. 1 at ¶ 11. Plaintiff-Intervenors allege

that, after conducting a cursory investigation, the General Manager, who was retained by Jaffer,

did not intervene to protect Ms. Contreras from the ongoing harassment or discipline her

harasser. *Id*. ¶¶ 12, 14. Instead, the General Manager retaliated against Ms. Contreras by

depriving her of a translator, effectively shutting down Ms. Contreras' ability to convey her

complaints or concerns to the General Manager or the Regional Director. *Id*. ¶ 13. Further,

Jaffer's Employee Handbook was issued to employees in English only, which Ms. Contreras

does not speak or read. *See* Dkt. 27, Phelan Decl., Ex. C. Ms. Contreras further alleges that after she reported the harassment to the General Manager on site at Hawthorn Suites, her hours were reduced, and she was denied a raise that other housekeepers received. *Id.* ¶ 13.

Plaintiff-Intervenors' allegations of a lack of meaningful notice of harassment policies and procedures to non-English-speaking employees, Jaffer's failure to stop the discriminatory conduct suffered by Plaintiff-Intervenors, and retaliation by Jaffer's General Manager, are sufficient to state a claim of discriminatory interference by Jaffer that may render it liable as an indirect employer under Title VII. *See Ass'n of Mexican-American Educators*, 231 F.3d at 581.

2.   <u>WLAD</u>

Similarly, Jaffer, Inc. may also be held liable to Plaintiff-Intervenors for violations of their rights under the WLAD as their "employer," as the term is defined in the statute. See RCW 49.60.040(3). Like Title VII, the WLAD allows employees to recover against their employers for workplace discrimination and broadly defines "employer" to "include[] any person acting in the interest of an employer, directly or indirectly, employs eight or more persons . . . ." RCW 49.60.040(3) (emphasis added). The Washington Supreme Court construes this definition broadly to effectuate the "overarching purpose of the law [which] is 'to deter and to eradicate discrimination in Washington.'" *Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, 359-60 (2001) (quoting *Marquis v. City of Spokane*, 130 Wn.2d 97, 109, 922 P.3d 43 (1996)) (finding individual supervisor personally liable for discrimination under the WLAD, although supervisor was not explicitly listed in statute). Here, Jaffer clearly fits within the broad definition of Plaintiff-Intervenors' employer under the WLAD because it identified itself as such in materials Hawthorn Suites provided to Plaintiffs. Dkt. 27, Phelan Decl., Exs. B-G. Identifying Jaffer, the entity that creates and enforces anti-discrimination policies at Hawthorn Suites, as the employer

ORDER GRANTING INTERVENOR-
PLAINTIFF'S MOTION FOR JOINDER - 10

1    would also effectuate the "overarching purpose" of the WLAD "to deter and to eradicate

2    discrimination." *Brown*, 143 Wn.2d at 359-60. In the alternative, Jaffer "act[ed] in the interest

3    of" Plaintiff-Intervenors' employer by writing and enforcing its personnel policies and

4    responding to the EEOC charges. Dkt. 27, Phelan Decl. Ex. C; Ex. D; Ex. E; Ex. G.

5              3.    <u>According Complete Relief</u>

6              Jaffer is a necessary party to this action because the EEOC and Plaintiff-Intervenors seek

7    injunctive relief ordering GIPHX10 to improve its employment policies, practices, and programs

8    to guarantee Defendant's employees' rights to be free from workplace discrimination. Dkt. 1 ¶¶

9    A, B; Dkt. 14 ¶ B. The record reflects that Jaffer writes, implements, and administers the

10   personnel policies that GIPHX10 uses and that its employees must follow. *See generally* Dkt. 27,

11   Phelan Decl., Ex. C. Without Jaffer's participation in the instant litigation, the personnel policies

12   to which GIPHX10's employees are subject are unlikely to change, thereby depriving Plaintiffs

13   of "consummate rather than partial or hollow relief." *See Alto*, 738 F.3d at 1126.

14             4.    <u>Feasibility of Joinder</u>

15             This Court enjoys specific jurisdiction over Jaffer because of Jaffer's contacts in the

16   forum state, and joinder of Jaffer would not deprive the Court of federal subject matter

17   jurisdiction. A court has specific jurisdiction over a foreign company if the litigation arises out of

18   that company's contacts with the forum state. *Bristol-Myers Squibb Co. v. Superior Court of*

19   *California, San Francisco Cnty.*, 137 S.Ct. 1773, 1780 (2017) (federal courts may exercise

20   specific jurisdiction over a foreign company where the litigation arises out of that company's ties

21   with the forum state). Although Jaffer is headquartered in Alberta, Canada, it is subject to

22   specific jurisdiction in the Western District of Washington because it has contacts in Kent,

23   Washington through its ownership of Defendant GIPHX10. Dkt. 7. The alleged discriminatory

conduct at issue here arose from Jaffer's ownership of GIPHX10 and its alleged failure to protect its employees in Kent from unlawful discrimination and retaliation. *See* Dkt. 1, Dkt. 14.

This Court exercises federal subject matter jurisdiction over Plaintiffs' claims under Title VII, which supply federal question jurisdiction. 28 U.S.C. § 1331. This Court exercises supplemental jurisdiction over Plaintiff-Intervenors' pendant state law claims because the body of evidence necessary to resolve the state law claims substantially overlaps with evidence relevant to their federal claims. 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Thus, joining Jaffer as a necessary party will not disrupt Court's subject matter jurisdiction and therefore, joinder is feasible. *See* Fed. R. Civ. P. 19(a)(1).

5.   Timeliness of Motion

GIPHX10 argues that Plaintiff-Intervenors' motion is untimely because the deadline to join additional parties was on April 29, 2021. Dkt. 23 at 5 (citing Court's Order at Dkt. 18). Plaintiff-Intervenors' motion is timely because it was electronically filed at 2:45 p.m. on April 29, 2021. Dkt. 19 at 13. The filing deadline refers to the date by which the motion must be filed, not by which the motion must be noted for consideration. *See*, *e.g.*, Fed. R. Civ. P. 6(a)(4) (defining "Last Day" as deadline for "filing," not "noting"). Where the Court wishes to impose a deadline for noting motions, it so specifies. *See e.g.,* Dkt. 18 ("All motions related to discovery must be noted for consideration no later than October 29, 2021"). The Court made no such designation as to motions to join additional parties.

**CONCLUSION**

Based on the foregoing, the Court concludes that Jaffer, Inc. is a necessary party to this litigation and Plaintiff-Intervenors' motion for joinder (Dkt. 19) is **GRANTED**.

1    Accordingly, Plaintiff-Intervenors may join Jaffer, Inc. to this action by effectuating

2    service of process on it.

3    DATED this 3rd day of June, 2021.

4

5                                                                    _____

6                                                                    BRIAN A. TSUCHIDA
                                                                     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER GRANTING INTERVENOR-
PLAINTIFF'S MOTION FOR JOINDER - 13